**A.W., a minor By and Through his Father and Next Friend, N.W.; N.W. and S.W., Appellants,**

v.

**NORTHWEST R–1 SCHOOL DISTRICT; John Gibson, in his capacity as Acting Superintendent of the Northwest R–1 School District; The Department of Elementary and Secondary Education; State Board of Education; and Arthur Mallory in his capacity as Commissioner of the Department of Elementary and Secondary Education, Appellees.**

No. 86–1541.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1986.

Decided March 6, 1987.

Rehearing and Rehearing En Banc Denied April 8, 1987.

Ann B. Lever, St. Louis, Mo., for appellants.

Louis Jerry Weber, Hillsboro, Mo., and Margaret K. Landwehr, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

Before JOHN R. GIBSON, FAGG, and MAGILL, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

This appeal requires us to interpret the mainstreaming provisions of the Education of All Handicapped Children Act, 20 U.S.C. §§ 1401–1461 (1982) ("the Act"). A.W., a handicapped child, and his parents appeal the judgment of the district court [1] denying their request for declaratory and injunctive

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

relief against the Northwest R–1 School District and various educational agencies and officials of the State of Missouri. They seek to have A.W. placed in House Springs Elementary School, located in Northwest R–1, rather than in State School No. 2, a school designed for and which exclusively educates handicapped children. The district court found that A.W. was severely mentally retarded and would only minimally benefit from placement in House Springs. The court concluded that the mainstreaming provisions of the Act do not require A.W.'s placement in House Springs. A.W. argues that the district court misinterpreted the Act's mainstreaming provisions by considering the cost to Northwest R–1 of providing a special teacher at House Springs for A.W. and by considering A.W.'s ability to benefit from placement in House Springs. We affirm the judgment of the district court.

A.W. is an elementary school-aged boy with Down's syndrome. The trial court found that he functions within the range of severe mental retardation and has only minimal self-care abilities. He has difficulty dressing himself, using the restroom, and washing himself. He must be closely supervised at all times and his behavior is sometimes disruptive. A.W.'s ability to express himself is extremely limited. His vocalizations are very difficult to understand and usually consist of one- or two-word expressions. He does not grasp the abstract concept of numbers, and he has only partially mastered the alphabet. Based on the results of numerous standardized tests and the other evidence

presented, the trial court concluded that A.W. "clearly functions at or below one-half of the level expected of children of his age and is 'severely handicapped' under [Mo.Rev.Stat. § 162.675(3) (1978) ]." [2]

In May of 1980, A.W.'s mother attempted to enroll him in Northwest R–1 at House Springs Elementary School. Northwest R–1 recommended that he be schooled at a private institution, and then referred A.W. to the Missouri Department of Elementary and Secondary Education for evaluation and services. After extensive testing, the Department concluded that A.W. was severely handicapped within the meaning of section 162.675(3) and was eligible for placement in State School No. 2 in Mapaville, a school exclusively attended by and designed for handicapped children.

A.W.'s parents challenged his classification as "severely handicapped" and objected to his placement in the segregated environment of State School No. 2 through the procedure for agency appeals set forth in Mo.Rev.Stat. §§ 162.950, 162.961, and 162.-962 (1978).[3] At the level of review commonly referred to as the due process hearing, *see* 20 U.S.C. § 1415(b)(2), a three-person panel heard evidence presented by A.W.'s parents and by Northwest R–1 and concluded that A.W. was "severely handicapped." The panel also concluded, however, that it was inappropriate to place A.W. in State School No. 2 and that an appropriate educational program for A.W. must include interaction with A.W.'s non-handicapped peers. A.W.'s parents continued the appeal process to the State Board

**2.** Section 162.675(3) of the Missouri Revised Statutes defines the term "severely handicapped children" as "handicapped children under the age of twenty-one years who, because of the extent of the handicapping condition or conditions, as determined by competent professional evaluation, are unable to benefit from or meaningfully participate in programs in the public schools for handicapped children." The Missouri Department of Elementary and Secondary Education is charged with determining whether children are eligible for services within the state schools for the severely handicapped. Mo.Rev. Stat. § 162.735. Under the Department's guideline, a severely mentally retarded child is "severely handicapped," and thus eligible for placement in a state school, if he "perform[s] on

measures of intelligence, social skills, adaptive behavior, and self-care skills at a level one-half or less than that of normal students of equivalent age and ethnic-cultural background when measured by like standardized instruments of cognitive ability and adaptive behavior." Defendants' Exhibit Y at 179.

**3.** These sections are responsive to the requirement that states receiving federal funds under the Act create "procedural safeguards" to ensure that handicapped children receive appropriate free public education. 20 U.S.C. § 1415. The parties waived by stipulation any claim that these procedures were not complied with or that these procedures did not satisfy due process.

of Education. The Board's designated representative affirmed the panel's conclusion that A.W. was severely handicapped, but reversed its decision regarding the appropriate placement of A.W. because this determination was beyond the scope of the due process panel's authority. The Board representative ruled that A.W. should be placed in State School No. 2.

A.W. and his parents then brought this action in the district court under 20 U.S.C. § 1415(e)(2). They sought declaratory and injunctive relief against Northwest R–1 and its Superintendent, John Gibson; the Department of Elementary and Secondary Education and its Commissioner, Arthur Mallory; and the State Board of Education. Once again, they challenged A.W.'s classification as severely handicapped. They also sought an injunction against his placement in State School No. 2 and a declaration that the Act's mainstreaming provisions required A.W.'s placement in House Springs Elementary School.[4] The parties waived by stipulation any claim that they failed to exhaust administrative remedies or that A.W. was not given a full and fair opportunity to be heard before an impartial tribunal at each step of the review process.

After a five-day bench trial, the district court entered judgment against A.W. and his parents. The court first found that A.W. was severely handicapped within the meaning of Mo.Rev.Stat. § 162.675(3). The court noted that A.W.'s classification was not dispositive because the Act requires that handicapped children be educated along with nonhandicapped children "to the maximum extent appropriate." 20 U.S.C. § 1412(5); *see also* Mo.Rev.Stat. § 162.-680.2 (handicapped and nonhandicapped children should be educated together "to the maximum extent practicable"). In determining whether the Act's requirements had been met, the court employed the analyses set forth by the Supreme Court in *Board of Education v. Rowley,* 458 U.S. 176, 206–07, 102 S.Ct. 3034, 3050–51, 75 L.Ed.2d 690 (1982), and by the Sixth Circuit in *Roncker v. Walter,* 700 F.2d 1058, 1063 (6th Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983).

The court determined that State School No. 2 provided A.W. with an appropriate public education as defined in *Rowley.* Then the court considered whether, given that State School No. 2 was an appropriate placement for A.W., the Act's mainstreaming provisions nonetheless required that A.W. be placed in House Springs. It held that the Act did not. The trial court observed that the nature of A.W.'s handicap was such that his interaction with his nonhandicapped peers would be limited to mere observation[5] and concluded that:

> In light of the minimal benefit A.W. would receive from placement in House Springs, the Court finds that the placement is not feasible. The specific difficulty with placement at the House Springs School is that there is no teacher who is certified to teach severely retarded children like A.W. The addition of a teacher is not an acceptable solution here since the evidence before the Court shows that the funds available are limited so that placing a teacher at House Springs for the benefit of a few students

---

**4.** A.W. seeks to be placed in a special, self-contained classroom at House Springs with a teacher trained to meet his exceptional educational needs. Interaction with his nonhandicapped peers would principally take place during recess, lunch, and gym class.

**5.** The trial court found the following:

> [B]ecasue [sic] of A.W.'s severe retardation the exposure to non-handicapped children if placed at House Springs would include only the opprotunity [sic] to observe, rather than participate with, non-handicapped children on the bus ride to school, at lunch, at recess and in activities such as physical education. The testimony of A.W.'s elementary school instructors at the due process hearing and at trial

showed that A.W. has only limited interaction with others. The interaction that does exist is primarily directed to those to whom A.W. is close or particularly familiar. A.W. seldom mimics the behavior of other students. Further, although it would be physically possible to provide most of the [State School No. 2] programs at House Springs Elementary, some of the special features of that school which would meet A.W.'s needs, the bathrooms adjacent to each room and the simulated grocery store, bedroom and kitchen, would not transfer to House Springs.

*A.W. v. Northwest R–1 School Dist.,* No. 82–350–C–2, slip op. at 11–12 (E.D.Mo. Feb. 3, 1986).

at best, and possibly only A.W., would directly reduce the educational benefits provided to other handicapped students by increasing the number of students taught by a single tacher at [State School No. 2]. The Court finds that although the plaintiff presented evidence that A.W. might benefit from exposure to nonhandicapped peers, this possible benefit is insufficient to justify a reduction in unquestioned benefits to other handicapped children which would result from an inequitable expenditure of the finite funds available.

*A.W.*, slip op. at 12. The court entered its judgment in favor of the state and local defendants.

On appeal, A.W. and his parents take issue with the trial court's interpretation of the mainstreaming provisions of the Act, contending that the court erred in considering the benefit to A.W. of placement in House Springs and the cost of such placement to Northwest R–1. They also contend that the trial court erred in refusing to re-open and modify its judgment in light of additional evidence probative of A.W.'s ability to benefit from placement in House Springs.

## I.

The Education for All Handicapped Children Act provides federal money to assist state and local agencies in educating handicapped children. *See* 20 U.S.C. §§ 1401–1461. Receipt of this money is conditioned on the state's compliance with procedures and guidelines calculated to "[assure] all handicapped children the right to a free appropriate public education." *Id.* § 1412(1). Included are the requirements that individualized educational programs be developed for each handicapped child, *id.* § 1401(18), and that this program be reviewed annually. *Id.* § 1414(a)(5). The Act also requires that the state develop procedural safeguards to assure the proper classification of handicapped children and to permit administrative and judicial review of this classification and consequent educational placement. *Id.* § 1415. Congress, in enacting this legislation, found that "one million of the handicapped children in the United States are excluded entirely from the public school system and will not go through the educational process with their peers." *Id.* § 1400(b)(4).

For our present purposes, the most important provision of the Act is section 1412(5), which provides that "to the maximum extent appropriate, handicapped children * * * are to be educated with children who are not handicapped, and that * * * removal of handicapped children from the regular educational environment [should occur] only when the nature or severity of the handicap is such that education in regular classes with use of supplementary aids and services cannot be achieved satisfactorily." *Id.* § 1412(5). This requirement is known as "mainstreaming." *Mark A. v. Grant Wood Area Educ. Agency,* 795 F.2d 52, 54 (8th Cir.1986). It is also referred to as the "least restrictive environment" in the federal regulations implementing the Act. 34 C.F.R. §§ 300.550–.556 (1986). These regulations repeat the above statutory language, *id.* § 300.550, and further require that each state receiving funds pursuant to the Act establish a "continuum of alternative placements" for handicapped children including the opportunity for education in "regular classes, special classes, [and] special schools." *Id.* § 300.551(b)(1). Missouri has enacted analogous legislation addressing mainstreaming. *See* Mo.Rev. Stat. § 162.680.2 (1978).[6]

This statutory framework reveals the strong congressional preference for mainstreaming. *See Board of Educ. v. Rowley,* 458 U.S. 176, 181 n. 4, 102 S.Ct. 3034, 3038 n. 4, 73 L.Ed.2d 690 (1982); *Mark A.,* 795 F.2d at 54; *Springdale School Dist. # 50*

---

**6.** The Missouri statute provides:

To the maximum extent practicable, handicapped and severely handicapped children shall be educated along with children who do not have handicaps and shall attend regular classes. Impediments to learning and to the normal functioning of such children in the regular school environment shall be overcome whenever practicable by the provision of special aids and services rather than by separate schooling for the handicapped.
Mo.Rev.Stat. § 162.680.2 (1978).

*v. Grace,* 693 F.2d 41, 43 (8th Cir.1982), *cert. denied,* 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 298 (1983). This congressional preference, however, is not absolute. "Congress recognized that regular classrooms simply would not be a suitable setting for the education of many handicapped children. * * * The Act [itself] provides for the education of some handicapped children in separate or institutional settings." *Rowley,* 458 U.S. at 181 n. 4, 102 S.Ct. at 3038 n. 4; *see* 20 U.S.C. § 1412(5) ("nature or severity of the handicap [may be] such that education in the regular classroom cannot be achieved satisfactorily").

As the district court correctly observed, the Supreme Court in *Rowley* articulated a two-part test for compliance with the Act. "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" *Rowley,* 458 U.S. at 206–07, 102 S.Ct. at 3050–51 (footnotes omitted). The parties stipulated before trial that the procedural requirements of the Act had been satisfied, thus answering the first of these two questions. *A.W.,* slip op. at 8; Designated Record at 105–10. As to the second question, the district court observed that the Court in *Rowley* was not directly addressing the issue of mainstreaming.[7] Therefore, it looked to the Sixth Circuit's opinion in *Roncker,* 700 F.2d at 1058, for guidance. The Sixth Circuit identified the following factors as relevant to the mainstreaming issue:

> In a case where the segregated facility is considered superior, the court should determine whether the services which make that placement superior could be feasibly provided in a non-segregated setting. If

they can, the placement in the segregated school would be inappropriate under the Act. Framing the issue in this manner accords the proper respect for the strong preference in favor of mainstreaming while still realizing the possibility that some handicapped children simply must be educated in segregated facilities * * * because any marginal benefits received from mainstreaming are far outweighed by the benefits gained from services which could not feasibly be provided in the non-segregated setting. Cost is a proper factor to consider since excessive spending on one handicapped child deprives other handicapped children.

*Id.* at 1063 (citations omitted). The district court quoted this passage from *Roncker,* and modeled its ultimate conclusion—that the marginal benefit of A.W.'s mainstreaming was outweighed by the deprivation of benefit to other handicapped children—on this language. *A.W.,* slip op. at 12.

■ We are satisfied that the district court properly analyzed A.W.'s claim. We believe that the Sixth Circuit in *Roncker* correctly interpreted the Act's mainstreaming provisions as allowing a court to consider both cost to the local school district and benefit to the child. This interpretation is consistent with the language of 20 U.S.C. § 1412(5), which significantly qualifies the mainstreaming requirement by stating that it should be implemented "to the maximum extent *appropriate,*" 20 U.S.C. § 1412(5) (emphasis added), and that it is inapplicable where education in a mainstream environment "cannot be achieved *satisfactorily.*" *Id.* (emphasis added). It is consistent with the Supreme Court's conclusion in *Rowley* that the Act does not require states to

---

**7.** Although the district court did not explicitly answer the second part of the *Rowley* test, the court did find that State School No. 2 provided A.W. with an appropriate free education as defined in *Rowley.* *A.W.,* slip op. at 10. The Supreme Court held that the appropriate free education requirement is satisfied if the state provides personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. *Rowley, 458 U.S. at 203, 102 S.Ct. at 3049.* However,

this definition assumes compliance with the other requirements of the Act, *id.* at 204, 102 S.Ct. at 3049, including the mainstreaming requirement. We are thus led back to the principal issue raised on this appeal. In any event, A.W. and his parents do not seriously dispute the district court's finding that placement at State School No. 2 would be appropriate for A.W., *i.e.,* he would derive educational benefit therefrom, *apart from* the issue of compliance with the mainstreaming requirement.

provide each handicapped child with the best *possible* education at public expense, 458 U.S. at 188–89, 102 S.Ct. at 3041–42, and the Court's recognition that available financial resources must be equitably distributed among all handicapped children. *Id.* at 193 n. 15, 102 S.Ct. at 3044 n. 15. It is also consistent with our earlier interpretations of the Act,[8] *Mark A.,* 795 F.2d at 54; *Springdale School Dist.,* 693 F.2d at 43, and the interpretation of at least two additional circuits. *See Department of Educ. v. Katherine D.,* 727 F.2d 809, 813–14 (9th Cir.1983) (the Act's requirements must be construed in light of the reality of limited public funding), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 260 (1985); *Age v. Bullitt County Pub. Schools,* 673 F.2d 141, 145 (6th Cir.1982) (need for free, appropriate education must be reconciled with state's need to allocate scarce funds among as many handicapped children as possible); *Doe v. Anrig,* 692 F.2d 800, 806–07 (1st Cir.1982) (reality of limited public monies must be considered in reviewing placement decisions), *ovr'ld on other grounds, Doe v. Brookline School Comm.,* 722 F.2d 910, 917 (1st Cir.1983); *see also Tokarcik v. Forest Hills School Dist.,* 665 F.2d 443, 458 (3d Cir.1981) (noting that mainstreaming in the instant case did not adversely affect state finances), *cert. denied,* 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982).

We decline to construe the Act in the manner A.W. urges. To do so would tie the hands of local and state educational authorities who must balance the reality of limited public funds against the exceptional needs of handicapped children. To do so would also encourage the federal courts to ignore the Supreme Court's admonition that "[t]he primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child." *Rowley,* 458 U.S. at 207, 102 S.Ct. at 3051. We hold that the district court did not err in considering whether A.W. would benefit from placement in House Springs or in considering the cost to Northwest R–1 of such a placement.[9]

## II.

A.W. and his parents also contend that the trial court erred in refusing to open and amend its judgment in light of additional evidence they sought to present via a motion under Rule 59 of the Federal Rules of Civil Procedure. This evidence consisted of affidavits which they argue showed that A.W. was making educational progress in a self-contained classroom at House Springs, thus indicating that his placement at House

8. In *Mark A.,* we held that the Act did not require the state to pay for the best possible education for a handicapped child. 795 F.2d at 54. Mark's parents sought to have him placed in an integrated classroom in a private school. The local educational authorities placed the child in a self-contained classroom in a public school. Mark's parents contended that the Act's mainstreaming provision required that the state undertake to pay for their desired placement, as the private school provided Mark with greater opportunity for interaction with his non-handicapped peers. We did not disturb the state educational authorities' decision to place Mark in the less expensive alternative. *Id.* In *Springdale School District # 50,* we again deferred to the judgment of the state educational authorities, although in *Springdale* the state educational authorities placed the child in a more expensive educational environment, requiring the local public school to furnish a special instructor. 693 F.2d at 41–42. We referred to the issue of cost, but held that cost did not justify overriding

the decision of the state authorities. *Id.* at 43. A.W.'s placement at State School No. 2 was approved by both the local and state educational authorities. Thus, our result here does not conflict with our opinion in *Springdale.*

9. A.W. develops at length in his brief an argument regarding the failure of Northwest R–1 to develop a continuum of alternative placements for handicapped children as required by 30 C.F.R. § 300–551. Appellant's Opening Brief at 19–29. Indulging in such a wide-ranging investigation into Northwest R–1's educational policies and facilities would go far beyond the scope of review of A.W.'s placement dictated by *Rowley, i.e.,* is A.W.'s placement at State School No. 2 "reasonably calculated to enable the child to receive educational benefits?" 458 U.S. at 207, 102 S.Ct. at 3051. As we observed in footnote 7, *supra,* A.W. and his parents do not seriously challenge the district court's determination that A.W.'s placement at State School No. 2 is otherwise appropriate.

Springs would be appropriate under the *Rowley* standard. The local and state defendants opposed the Rule 59 motion and introduced their own affidavits which they argue support the conclusion that A.W. is making no progress at House Springs.

■ The decision to grant or deny a Rule 59 motion is committed to the sound discretion of the trial court. *Harris v. Arkansas Dep't of Human Servs.*, 771 F.2d 414, 416–17 (8th Cir.1985); *Pitts v. Electro-Static Finishing, Inc.*, 607 F.2d 799, 803 (8th Cir. 1979). In order for us to reverse the trial court's denial of this motion, A.W. and his parents must show us a clear abuse of this broad discretion. *Harris*, 771 F.2d at 417; *see Bond v. IMFS, Inc.*, 727 F.2d 770, 771 (8th Cir.1984). We do not think that such a showing has been made.

■ We have examined the affidavits submitted by both parties. If we assume for the sake of argument that the evidence A.W. sought to bring to the trial court's attention *does* show that he is deriving some educational benefit at House Springs, we remain unpersuaded that the trial court abused its discretion in refusing to reopen its judgment. A.W.'s placement and his individual educational program are subject to periodic review pursuant to 20 U.S.C. § 1413(a)(1) and 34 C.F.R. § 300.34(d). Evidence of A.W.'s progress at House Springs may be brought to the attention of the local educational authorities at that time, and if the result is unsatisfactory to A.W. and his parents, administrative and judicial review of his placement is available. Therefore, the evidence was not "of such probative importance that its addition will prevent a miscarriage of justice from occurring." *Arthur Murray, Inc. v. Oliver*, 364 F.2d 28, 34 (8th Cir.1966).

We affirm the judgment of the district court.