184 F.3d 912 (7th Cir. 1999)
 Board of Education of LaGrange School District No. 105, Plaintiff-Appellant,
v.
Illinois State Board of Education and Ryan B., by and through his parents and next friends, Kevin B. and Elaine B., Defendants-Appellees.
 No. 98-4077
 United States Court of Appeals, Seventh Circuit
 Argued April 9, 1999
Decided July 29, 1999
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 98 C 2973--Wayne R. Andersen, Judge.
 Before Bauer, Flaum and Rovner, Circuit Judges.
 Flaum, Circuit Judge.
 
 
 1
 LaGrange School District No. 105 appeals the district court's decision finding that it failed to offer Ryan B. ("Ryan") a free appropriate public education within the meaning of the Individuals With Disabilities Education Act, 20 U.S.C. sec. 1400 et seq. ("IDEA") and ordering reimbursement to Ryan's parents for the cost of his education in a private pre-school.
 
 I. BACKGROUND
 
 2
 Children age three to twenty-one who are eligible for special education under IDEA are entitled to receive a free appropriate public education ("FAPE") from their home school district. Ryan was born on January 23, 1994 and has Down Syndrome. In 1996, when he was two, his parents placed him in a private pre-school with nondisabled children. When he turned three, his home school district, LaGrange School District No. 105 ("School District"), was asked to evaluate him and determine his eligibility for special education programs pursuant to IDEA. The School District does not have a program for disabled students. The School District convened a multi-disciplinary conference ("MDC") and prepared the statutorily required individualized education program ("IEP"), which, in January 1997, concluded that Ryan was eligible for special education and recommended placing him in a program limited to disabled students at Brook Park Elementary School, five miles from his home and in a different school district.
 
 
 3
 In February 1997, Ryan's parents rejected the Brook Park placement and requested the creation of a program within the School District that would include nondisabled students or access to similar programs in neighboring districts. A second IEP meeting was held and Ryan's parents again rejected the Brook Park program. On March 19, 1997, the School District offered to have the IEP team consider a state-funded "At-Risk" program, called Project IDEAL, within Ryan's district. This program is available to children who are primarily at risk of academic failure. After Ryan's parents visited Project IDEAL, they requested a due process hearing as provided for in IDEA. There is no evidence that the School District ever evaluated the At-Risk program with reference to Ryan's IEP.
 
 
 4
 Under IDEA, disputes such as these are first handled administratively through a two-tiered process. The initial hearing is called the Level I Due Process Hearing. Appeal from that decision results in a second administrative hearing, the Level II. From there, a party may appeal to federal court. In this case, the Level I hearing officer found that Ryan's placement for the 1997- 98 school year should have been in the Project IDEAL/At-Risk program. However, since this program was not offered to Ryan until March 19, 1997, the School District was ordered to pay the costs of Ryan's private pre-school from January until March 19, 1997. Both sides appealed the Level I decision--Ryan's parents on the issue of placement in the At-Risk program and the School District on the limited issue of payment for the private school. The Level II hearing officer ruled that neither the Brook Park placement nor the At-Risk program provided Ryan with a FAPE because neither placement satisfied IDEA's requirement that disabled children be educated in the "least restrictive environment." See 20 U.S.C. sec. 412; 34 C.F.R. sec.sec. 330.550-556. The Level II officer also ordered the School District to pay for Ryan's private school.
 
 
 5
 The School District appealed. On cross motions for summary judgment, the district court ruled in Ryan's favor and held that the School District had failed to provide a FAPE and affirmed the award of private pre-school costs. The School District now appeals. The United States Department of Education filed an amicus brief in support of Ryan.
 
 II. DISCUSSION
 
 6
 A. Standard of Review.
 
 
 7
 As an initial matter, the standard of review in this case differs from that governing the typical review of summary judgment. Heather S. v. State of Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997). When neither party has requested that the district court hear additional evidence beyond what was in the record at the Level II stage, as is the case here, there is nothing new presented to the district court, and "thus [t]he motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." Id. Therefore, despite being termed summary judgment, the district court's decision is based on a preponderance of the evidence. Id. The party challenging the administrative finding, here the School District, bears the burden of proof. Id. The district court is required to give "due weight" to the results of the administrative proceedings and not to substitute its judgment for that of the administrative hearing officer's. Id. at 1052-1053. Where there are conflicting decisions on an issue between the two levels of a state administrative review, federal courts are required to defer to the final decision--here the Level II determination--of the state authorities. Id. at 1052. Thus, while we review the ultimate decision de novo, in the absence of a mistake of law, we may only reverse the district court if its findings were clearly erroneous. Id.
 
 
 8
 B. Whether either program was a FAPE.
 
 
 9
 The central issue in this case is whether either program offered by the School District was a FAPE within the meaning of IDEA. The district court held that neither was because each failed to satisfy the least restrictive environment requirement and that private placement provided Ryan with optimal educational benefit. The School District argues that, in so holding, the district court misapplied the LRE requirement.
 
 
 10
 Under IDEA, a FAPE is an educational program "specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." Board of Educ. of Murphysboro Community Unit Sch. Dist. No. 186 v. Illinois State Bd. of Educ., 41 F.3d 1162 (7th Cir. 1994) (quotations omitted). IDEA explicitly provides that states receiving federal funds must:
 
 
 11
 establish procedures to insure that, to the maximum extent appropriate, handicapped children . . . are educated with children who are not handicapped, and that special education, separate schooling, or other removal of handicapped children from the regular education environment occurs only when the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.
 
 
 12
 20 U.S.C. sec. 1412 (5)(B). This requirement is known as "main streaming," and, as we have held, this provision creates a strong preference in favor of it. See Lachman v. Illinois State Bd. of Educ., 852 F.2d 290, 295 (7th Cir. 1988); see also Daniel R.R. v. State Bd. of Educ., 874 F.2d 1036, 1045 (5th Cir. 1989); A.W. v. Northwest R-1 Sch. Dist., 813 F.2d 158, 162 (8th Cir. 1987); Roncker v. Walter, 700 F.2d 1058, 1063 (6th Cir. 1983). In addition to the statutory presumption, IDEA's implementing regulations provide that disabled children are to be educated in the least restrictive environment ("LRE"). 34 C.F.R. sec. 300.550(b)(1). Just as the statute indicates, the regulations provide that a child may be removed from a regular educational environment only when the nature or severity of that child's disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily. 34 C.F.R. sec. 300.550(b)(2).
 
 
 13
 According to 34 C.F.R. sec. 300.552, a child is to be educated in the school that he or she would otherwise attend if not disabled unless the IEP for that child requires some other placement. The commentary to this regulation provides:
 
 
 14
 Public agencies that do not operate programs for nondisabled children are not required to initiate such programs to satisfy the requirements regarding placement in the LRE embodied in Sections 300.550-556. For these public agencies, some alternative methods for meeting the requirements include(1) Providing opportunities for participation (even part time) of preschool children with disabilities in other preschool programs operated by public agencies (such as Head Start);
 
 
 15
 (2) Placing children with disabilities in private school programs for nondisabled preschool children or private preschool programs that integrate children with disabilities and nondisabled children; and
 
 
 16
 (3) Locating classes for preschool children with disabilities in regular elementary schools.
 
 
 17
 In each case the public agency must ensure that each child's placement is in the LRE in which the unique needs of that child can be met, based on the child's IEP, and meets all of the other requirements of Sections 300.340-300.350 and Sections 300.550-300.556.
 
 
 18
 The district court concluded, as did the Level II hearing officer, that because neither placement offered by the School District satisfied the least restrictive environment requirement nor met Ryan's unique needs, the School District failed to provide Ryan with a FAPE. The School District argues this was error because each of its proposed programs met one of the alternatives stated in the commentary to 34 C.F.R. sec. 300.552. Therefore, claims the School District, it met its obligation to provide Ryan with a FAPE. We will discuss each placement in turn.
 
 
 19
 1. Brook Park Placement.
 
 
 20
 The district court held that the Brook Park program did not satisfy the LRE requirement because the private placement demanded by Ryan's parents was less restrictive and better met his unique needs. The School District argues that the Brook Park placement was a FAPE because it met the third alternative provided by the LRE regulation.[1]
 
 
 21
 Ryan contends that Brook Park is a program of exclusion--because it would not allow him to share a classroom with typically developing children--and that to the maximum extent appropriate, a FAPE should be with students who are not disabled. 20 U.S.C. sec. 1412(5)(B). Ryan maintains that the goal of IDEA is to include children with disabilities in regular classrooms, see Lachman, 852 F.2d at 295, and that the Brook Park program fails to meet this goal. Moreover, he and the Department of Education argue that the district court properly construed IDEA's regulations, particularly the requirement that each child's placement be in the LRE that meets the unique needs of the child.
 
 
 22
 The School District would have us focus only on the three alternatives listed in the LRE regulation and ignore the language following, which states, "the public agency must ensure that each child's placement is in the [least restrictive environment] in which the unique needs of that child can be met, based upon the child's IEP . . . . " See 34 C.F.R. sec. 300.552, Commentary. However, we agree with Ryan that the alternatives provided in the regulation do not absolve the School District of its duty to comply with the least restrictive environment requirement. Here, the Level II hearing officer concluded that the Brook Park placement was not the least restrictive environment for Ryan, in part because the evidence presented at the hearing indicated that his disability and IEP did not prevent him from benefitting from a more inclusive setting. The district court affirmed that conclusion, finding that the private pre- school in which Ryan was able to interact with nondisabled children provided the least restrictive environment. Given the extremely deferential standard with which we review those determinations, see Heather S., 125 F.3d at 1052- 53, we conclude that the district court's decision was not in error. Therefore, we agree that the Brook Park placement is not a FAPE for Ryan within the meaning of IDEA because it does not provide the least restrictive environment in which his individual needs can be met.
 
 
 23
 2. Project IDEAL/At-Risk.
 
 
 24
 The School District argues that the Project IDEAL/At-Risk program is a FAPE because it is similar to Head Start, and thus meets the first alternative provided in the commentary to 34 C.F.R. sec. 300.552. According to the School District, Project IDEAL is like Head Start because both programs are designed for children who have language, cultural and economic disadvantages and both are targeted toward nondisabled children.
 
 
 25
 The district court did not err in holding that Project IDEAL was not a FAPE. The Level II hearing officer rejected the At-Risk placement because she found that there was no evidence introduced at the hearing that the School District ever evaluated this program with reference to Ryan's IEP. The district court agreed with the hearing officer, noting that the record below was bereft of any testimony suggesting that the At-Risk program was ever evaluated in light of Ryan's unique needs as IDEA and the regulations mandate. As discussed above, the burden fell on the School District to overturn the Level II hearing officer's decision, Heather S., 125 F.3d at 1052, yet it failed to present any new evidence to the district court. For this reason alone, the district court had a sufficient basis to affirm the administrative decision.
 
 
 26
 Additionally, the district court was not persuaded by the School District's attempt to analogize Project IDEAL to Head Start (an analogy the court characterized as belated because it was introduced for the first time in the School District's submissions to that court). The School District never offered any testimony or evidence at either administrative hearing to establish that the At-Risk program was substantially equivalent to the Head Start program for purposes of IDEA. In fact, in reaching its decision that Project IDEAL was not a FAPE, the district court relied on testimony from the School District's Superintendent that "the At-Risk program was not a Head Start type program."[2]
 
 
 27
 Thus, based on the limited evidence before it, the district court did not err in concluding that the At-Risk program offered by the School District was not sufficient to provide the least restrictive environment for Ryan, based on his unique needs.
 
 
 28
 C. Reimbursement.
 
 
 29
 The district court also ordered the School District to reimburse Ryan's parents for the costs of his private education. The Supreme Court has held that parents may obtain reimbursement for private school tuition if the placement offered by the school district is inappropriate, the private placement selected by the parents is appropriate and equitable considerations support the parents' claim. Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993). Additionally, reimbursement to parents for the cost of private school is an equitable remedy which may be imposed in the discretion of the district court. Saint Tammany Parish Sch. Bd. v. Louisiana, 142 F.3d 776, 783 (5th Cir. 1998).
 
 
 30
 The School District argues that Ryan is not entitled to reimbursement because both placements it offered provided a FAPE. As discussed above, we disagree with the School District and have determined that neither program offered by the School District provided Ryan with a FAPE as required under IDEA. Moreover, we note, as did the district court, that the $75 per month private school tuition imposed on the School District is less than the monthly cost to transport Ryan to the Brook Park program and "certainly less than the attorneys' fees School District 105 presumably incurred prosecuting the appeal." We also share the district court's observation that because Ryan was represented by his father in these proceedings, the School District was further spared from having to pay Ryan's fees--a cost which normally may be recouped when a plaintiff wins his case under IDEA. Therefore, we hold that the district court did not abuse its discretion in awarding reimbursement for Ryan's private school tuition and affirm that award.
 
 III. CONCLUSION
 
 31
 For the foregoing reasons, we conclude that neither program offered by the School District provided Ryan with a free appropriate public education and that the district court did not abuse its discretion in ordering reimbursement to Ryan's parents for the cost of his private preschool. Therefore, we Affirm the judgment of the district court.
 
 
 
 Notes:
 
 
 [1]
 In its opening brief, the School District argues that the Brook Park program provides the "basic floor of opportunity" as required by the Supreme Court in Hendrick Hudson Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 202 (1982). However, the Rowley standard is inapplicable because that case did not reach the issue of placement in the least restrictive environment. Rather, Rowley limited its decision to an analysis of the level of supplementary services required under IDEA. See also Lachman v. State Board of Education, 852 F.2d 290, 294 (7th Cir. 1988).
 
 
 [2]
 Moreover, the evidence presented on the issue demonstrated that Project IDEAL differs significantly from Head Start. For example, Project IDEAL only accepts children who are at risk of academic failure, whereas Head Start typically targets low-income children without regard to their academic ability. Thus, in a program such as Head Start a child like Ryan would most likely share a classroom with nondisabled children, even if those children were culturally or financially disadvantaged. However, in Project IDEAL, Ryan would not have the opportunity to be educated in a "regular" classroom, because that program specifically excludes children who are advancing at the normal rate.