# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-2665

———————

Sarah Pachl, a minor, by her parents,   *
Kevin and Susanne Pachl,   *
   *
      Appellants,   *
   *  Appeal from the United States
    v.   *  District Court for the
   *  District of Minnesota.
Alice Seagren, in her capacity as   *
Commissioner of the Minnesota   *
Department of Education; School   *
Board of Anoka-Hennepin Independent  *
School District No. 11,   *
   *
      Appellees.   *

———————

Submitted: January 12, 2006
Filed: July 14, 2006

———————

Before BYE, HEANEY, and COLLOTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

Sarah Pachl is a disabled child who resides within the Anoka-Hennepin Independent School District No. 11 ("School District") in Minnesota. In this suit, she and her parents allege that the School District and the Minnesota Department of Education ("Department") violated her rights under the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The district court[1] dismissed the claims against the Department and granted **judgment on the administrative record** in favor of the School District on the remaining claims. The Pachls appeal, and we affirm.

I.

Sarah Pachl's developmental and physical disabilities include epilepsy, Dandy Walker syndrome, autism spectrum disorder, scoliosis, and bilateral hearing loss. To address these challenges, she receives occupational and physical therapy, speech therapy, and adaptive physical education services. She also wears hearing aids and uses a communication device.

While Pachl was in elementary school, she was in an integrated mainstream classroom for most of her school day, taking time away only for individual therapy. In the fall of 2003, however, when she entered the sixth grade at Coon Rapids Middle School, the School District determined that she should spend part of her day in a center-based Structured Teaching and Related Strategies ("STARS") special education program. The School District implemented an interim placement under which Pachl would spend some time in the mainstream classrooms, but most of her day in the STARS classroom.

At her parents' behest, Pachl was observed by an expert, Dr. Alice Udvari-Solner, in the interim setting. Dr. Udvari-Solner then prepared a report suggesting that Sarah Pachl's educational needs could be met most appropriately by spending the majority of her school day in general education classes with supplementary aids and services. Dr. Udvari-Solner opined that Pachl should not spend any time in the

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

STARS classroom, believing that it limited "age appropriate interaction and communication skills," and that the tasks Sarah Pachl was asked to perform in the STARS setting were "non-functional in nature and of little or no use to future functioning." (Appellant's App. at 65-66). Dr. Udvari-Solner also criticized the mainstream time as lacking effective inclusive practices and "characterized by missed opportunities for learning new skills, using her present skills, working on her IEP goals, or interacting with her age mates." (Appellant's App. at 66-67).

In March 2004, after input from Dr. Udvari-Solner and from Sarah's parents, the School District proposed a new Individualized Education Plan ("IEP") that increased her mainstream classroom time to approximately 280 minutes each day and limited the time in the STARS classroom to approximately 120 minutes per day. The School District also implemented some of Dr. Udvari-Solner's suggestions for integrating Sarah among her peers, such as providing a more age-appropriate schedule book and reading materials and placing her locker nearer to the homeroom classroom.[2] The School District, however, declined to follow Dr. Udvari-Solner's recommendation that Sarah not spend any time in the STARS classroom. Finding that recommendation to be in conflict with the assessments of other experts who had

_____

[2] In addition to dramatically increasing the amount of regular classroom time, the educational staff agreed to take the following steps, among others, in response to the Pachls' concerns about the interim placement: "a more age-appropriate schedule book will be developed"; "the Physical Therapist has trained staff in a more age-appropriate way to walk with Sarah in the hallways"; "Sarah['s] 20-20 class is now located closer to her locker"; and "Sarah's case manager will meet weekly with Sarah's education teacher." (Appellee's App. at 116). While the dissent objects to Sarah's use of a bathroom in the special education wing of the school, the School District explained that because Sarah wears a brace, she is required to remove her shirt and pants, as well as the brace – all outside a private cubicle – whenever she uses the toilet. The School District reasonably thought it inappropriate to place her in a common restroom, where she would be required to disrobe regularly in front of other students. (*Id.* at 117).

-3-

observed Sarah, the IEP team concluded that she "need[s] to have skills presented to her in [a] repetitive and structured manner" and that she "has shown progress in response to these strategies." (Appellant's App. at 97).

Although Pachl's time in the STARS classroom had been reduced in the new IEP, her parents objected to the IEP's inclusion of any STARS program time and argued that it did not provide the "least restrictive environment" for their daughter. The parents and School District also disagreed over the length of time proposed for the Extended School Year program for Sarah, and whether the School District should pay for tuition in a private summer program. The School District requested an administrative due process hearing to resolve the conflicts.

At the due process hearing, an administrative hearing officer considered evidence, including Dr. Udvari-Solner's report and the testimony of another expert, Dr. Robert J. Miller, who had observed Sarah in the classroom. Several professionals from Sarah's school also testified. After reviewing the evidence, the hearing officer agreed with the School District that the IEP was appropriate and consistent with the IDEA's requirements, and that "[t]he District proved that the program it provided in the March 17 IEP will place the student in the least restrictive environment." (Appellant's App. at 43). The hearing officer also found that the School District was not required to pay any additional costs for Extended School Year services in a private setting.

After the unfavorable administrative decision, the Pachls filed suit against the School District and the Department, alleging that the IEP implemented by the School District is not compliant with the IDEA. *See* 20 U.S.C. § 1415(i)(2)(A). Addressing the claims against the Department, the district court concluded that the Pachls had not alleged any act or omission by the State that could constitute a violation of the IDEA and thus granted the Department's motion to dismiss. In a separate order, the district court also entered judgment in favor of the School District. Reviewing the evidence

-4-

presented to the administrative hearing officer and giving due weight to the results of those proceedings, the district court concluded that "the hearing officer did not err when finding that the School District proved that the combination of mainstream and STARS learning environments will provide Sarah a meaningful education in the least restrictive environment." (Mem. and Order, R. Doc. No. 64, at 16; Appellant's App. at 24). The district court also found that the parties had agreed that the School District would pay the tuition portion of Sarah Pachl's private Extended School Year services for the summer 2004, and rejected the Pachls' allegations that the hearing officer had committed procedural violations during the administrative hearing.

## II.

On appeal, the Pachls no longer challenge the Extended School Year services provided to their daughter, but maintain that the School District's IEP violates Sarah's right to be educated in the "least restrictive environment," which, under the IDEA, requires that she be educated with non-disabled students to the "maximum extent appropriate." 20 U.S.C. § 1412(a)(5). As the Pachls note, the IDEA creates a preference for mainstream education, and a disabled student should be separated from her peers only if the services that make segregated placement superior cannot "be feasibly provided in a non-segregated setting." *Roncker v. Walter*, 700 F.2d 1058, 1063 (6th Cir. 1983). Nevertheless, while endorsing *Roncker*, we have emphasized that the statutory language "significantly qualifies the mainstreaming requirement by stating that it should be implemented 'to the maximum extent *appropriate*,' 20 U.S.C. § 1412[a](5) (emphasis added), and that it is inapplicable where education in a mainstream environment 'cannot be achieved *satisfactorily*.' *Id*. (emphasis added)." *A.W. v. Northwest R-1 Sch. Dist.*, 813 F.2d 158, 163 (8th Cir. 1987). Thus, removing a child from the mainstream setting is permissible when "the handicapped child would not benefit from mainstreaming," when "any marginal benefits received from mainstreaming are far outweighed by the benefits gained from services which could not feasibly be provided in the non-segregated setting," and

when "the handicapped child is a disruptive force in the non-segregated setting." *Roncker*, 700 F.2d at 1063.

When reviewing a school district's compliance with the IDEA's requirements after an administrative hearing, the district court should make an "independent decision," based on a preponderance of the evidence, whether the IDEA was violated. *Neosho R-V Sch. Dist. v. Clark*, 315 F.3d 1022, 1027-28 (8th Cir. 2003). The court must nonetheless give "due weight" to the administrative proceedings and should not "substitute [its] own notions of sound educational policy for those of the school authorities" which it is reviewing. *Id.* at 1028 (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). "Because judges are not trained educators, judicial review under the IDEA is limited." *E.S. v. Indep. Sch. Dist., No. 196*, 135 F.3d 566, 569 (8th Cir. 1998). We review the district court's findings of fact for clear error and its conclusions of law *de novo*. *Neosho*, 315 F.3d at 1027.

The Pachls argue that the district court applied the wrong legal standard to Sarah's IEP by inquiring whether the inclusion of STARS time was the most appropriate alternative, rather than determining whether there was a way feasibly to provide supplementary services in the regular classroom environment. We disagree. The district court described the correct legal standard in detail and discussed the appropriate governing cases, including *Roncker*. The court's conclusion – that the IEP at issue provides "a meaningful education in the least restrictive environment" (Mem. and Order, R. Doc. No. 64, at 16; Appellant's App. at 24) – also accords with the applicable law. Contrary to the Pachls' argument, the court considered at length whether Sarah could be educated satisfactorily in a mainstream setting with supplementary aids and services. The Pachls challenge the appropriateness of the court's comparison of segregated and integrated settings, but the comparison was relevant to the parties' dispute over whether Sarah Pachl would benefit from full inclusion in the mainstream setting. *See Roncker*, 700 F.2d at 1063. The Pachls

disagree with the conclusion that she would not so benefit, but the district court did not misstate or misapply the relevant legal standards.

The Pachls also challenge the factual basis for the district court's decision. Although the disputed IEP provides for Sarah to spend approximately 70 percent of her time in the mainstream environment, the Pachls argue that 100 percent of her day should be spent in the regular classroom setting.[3]  The district court rejected this argument, finding that "[w]ith full inclusion, Sarah would be among her peers, but not learning with them."  (Mem. and Order, R. Doc. No. 64, at 16; Appellant's App. at 24).  The court believed that "[p]lacing her in a learning environment in which she is inundated with lectures and instructions that she does not understand and which have no relevance to the work she is capable of doing is not providing her with a meaningful education." (*Id.*).  Ultimately, the court concluded that "[t]he proposed IEP, with thirty percent of the day in the STARS program and seventy percent in the mainstream, provides an appropriate balance so that Sarah will receive meaningful education and will also provide her with the social interaction and connection she needs." (*Id.*).

As support for their contention that Sarah should spend 100 percent of her day in the regular classroom, the Pachls point to the hearing officer's statement that "[w]hile the proposed IEP goals and objectives could be implemented in the mainstream, [the student's service providers] believed it would be more appropriate

---

[3]During oral argument, the Pachls suggested for the first time that even if Sarah Pachl cannot be educated in the regular *classroom*, she should be educated for the entire day in a mainstream *environment* – for example, by receiving one-on-one instruction in the library or in another setting where other students might be present. The briefs filed in this court and the district court argued only that Sarah should be instructed in the "regular class" for 100 percent of the day, and we decline to consider a different contention raised for the first time at oral argument. *See United States v. Larison*, 432 F.3d 921, 923 n.3 (8th Cir. 2006);  *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1306 n.3 (8th Cir. 1997).

for the Student if she were provided her education and services in both the center-based and mainstream settings." (Appellant's App. at 42). The Pachls believe this asserted "finding" by the hearing officer must be followed unless it is clearly erroneous.

We believe the district court properly approved the hearing officer's conclusion. The portion of the hearing officer's decision cited by the Pachls is within a section headed "factual background," and it merely summarizes portions of the testimony received. It is not a "finding" of the hearing officer. The finding that the hearing officer *did* make – that the proposed IEP educated Sarah Pachl "in the least restrictive environment" – was amply supported by the evidence. The educators who work with Sarah reported that structured teaching, which includes "establishing routines, using a visual schedule and work system, and using a visual structure to clarify independent work tasks," was a sound education strategy that was aimed at helping Sarah develop greater independence. (Appellee's App. at 113). Sarah's service providers also believed that the functional skills that Sarah would need to develop personal independence could not be fully addressed in the mainstream environment, "since many of the functional skills that Sarah should learn cannot be performed in the natural setting of the mainstream with enough frequency to provide her the needed practice." (Appellee's App. at 116). Dr. Miller similarly opined that while certain courses like choir and adaptive physical education, and even facts-based courses like health, might be appropriate with a parallel curriculum, additional mainstreaming would not benefit Sarah. (Appellee's App. at 90). Although the Pachls now argue that Sarah should spend the entire day in the regular classroom, even Dr. Udvari-Solner recommended only that Sarah spend "the majority of her school day" in "individually selected general education classes and environments." (Appellant's App. at 64, 73) (emphasis in original). With so many educators agreeing that the amount of mainstream time proposed in Sarah's IEP was adequate and appropriate, we find no error in the conclusion of the district court, giving due weight to the views of the School District on matters of sound educational policy, that the

IEP provided the least restrictive environment for Sarah's education within the meaning of the IDEA.[4]

## III.

The Pachls also argue that the district court erred in dismissing their claims against the state Department of Education. *See* Fed. R. Civ. P. 12(b)(6). In their view, the district court "mistakenly characterized the relief that [they] sought against the state as liability for hearing officers' decisions," while in fact they were basing their claims on the Department's "failure to exercise its responsibility for general supervision to assure the provision to Sarah Pachl of a free, appropriate public education in the least restrictive environment." (Appellant's Br. at 52, 59). As the

---

[4]As for the dissent's contention that the STARS program is "outdated and in direct conflict with best curriculum practices in special education," *post* at 14, it is well to consider the qualifications of the source for that opinion. After Dr. Udvari-Solner submitted her complaints about the STARS program, the educational staff at the School District reported that Dr. Udvari-Solner acknowledged that she was unaware of "structured teaching" techniques, or the "well respected and widely recognized TEACCH program" on which the School District's STARS program is heavily based. (Appellee's App. at 113). Noting that "a significant amount of published research exists to validate the philosophy, efficacy, use and suitability of structured teaching techniques," the School District reasonably concluded that Dr. Udvari-Solner's "complete lack of knowledge about this program raises a significant concern and deficiency with her report." (*Id.*). Judicial review in an IDEA case "may be conducted on the administrative record even if there are disputed issues of material fact," *Indep. Sch. Dist. No. 283 v. S.D. by J.D.*, 88 F.3d 556, 561 (8th Cir. 1996), and the district court resolved the disputes in this case after considering the School District's explanations for declining to adopt some of Dr. Udvari-Solner's recommendations. (Mem. and Order, R. Doc. No. 64, at 12-17). Particularly given the mandate that federal courts not substitute their own notions of sound educational policy for those of the school authorities, the opinions of this expert fall short of demonstrating error by the district court in granting judgment on the administrative record.

Pachls note, under the IDEA, state educational agencies such as the Department have affirmative responsibilities to ensure that the provisions of the IDEA requiring placement in the least restrictive environment are implemented, including a responsibility to "[r]eview the [School District's] justification for its actions" and "[a]ssist in planning and implementing any necessary corrective action." 34 C.F.R. § 300.556.

Thus, state educational agencies may be responsible for violations of the IDEA when the state agency in some way "fail[s] 'to comply with its duty to assure that the IDEA's substantive requirements are implemented.'" *John T. v. Iowa Dep't of Educ.*, 258 F.3d 860, 864-65 (8th Cir. 2001) (quoting *Gadsby v. Grasmick*, 109 F.3d 940, 952 (4th Cir. 1997)). For example, our court has suggested that "systemic violation" of the State's responsibilities under the IDEA might give rise to state liability. *See Reinholdson v. Minnesota*, 346 F.3d 847, 851 (8th Cir. 2003). The Fourth Circuit has further indicated that state agencies may be financially responsible for the costs of private placement where the applicable local agency was not providing a free and appropriate education. *See Gadsby*, 109 F.3d at 952. The Pachls' complaint, however, does not allege any specific facts or circumstances attributable to the Department that could form the basis of liability under the IDEA. *See* Fed. R. Civ. P. 12(b)(6). In fact, the only action attributed to the Department is its appointment of a hearing officer. Even on appeal, the Pachls fail to articulate a specific manner in which they believe the Department has neglected its duties to monitor the school district, implement corrective action, or otherwise ensure that IDEA requirements are met. Under these circumstances, we agree with the district court that the Pachls failed to state a claim against the Minnesota Department of Education.

The judgments of the district court are affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. The School District has violated Sarah's right to be educated in the "least restrictive environment," which, under the IDEA, requires that she be educated with nondisabled students to the *maximum* extent appropriate. The record conclusively shows that this has not been the case,[5] and that the proposed IEP, scheduled to take effect if the School District prevails on this appeal, will do little to improve Sarah's access to a more fully inclusive education for the reasons set forth below.

My concerns with the majority's opinion are three-fold. First, the majority defers to the administrator's determination that because Sarah will spend seventy percent of her day in general education under the proposed IEP, she will attend school in the least restrictive environment to the maximum extent appropriate. I disagree. Simply expanding her time in the general education classroom does not satisfy the IDEA unless Sarah is provided with the requisite aids and services that would enhance her access to rich educational opportunities, in accordance with her IEP, amidst her nondisabled peers to the maximum extent appropriate. Appellants and their expert have provided ample evidence of the missed opportunities for supporting Sarah's inclusion and growth in general education under her current IEP, and the multitude of modifications that could be implemented in general education to better serve her educational and social needs, in accordance with an updated IEP, for most of her day. The district court erred in failing to adopt the appellants' expert's recommendations, which, in my view, would provide her with the education she is legally entitled to.

---

[5]From third grade through fifth grade, Sarah was included in general education for more than seventy percent of her school day. When she was advanced to middle school, the School District advised the Pachls that Sarah would be placed in the STARS program, reducing her time in general education from more than seventy percent to less than thirty percent a day. It is unclear from the record which IEP has been implemented during litigation.

Second, Sarah's time in general education settings unlawfully subjects her to academic and social isolation. On these occasions, she is segregated from her nondisabled peers, precluding Sarah's participation in the routines of typical school and adolescent culture and development of relationships with nondisabled students. She arrives late and leaves class early because she changes classes while the hallways are empty, she interacts solely with the paraprofessional while in class, and she engages in tasks unrelated to the general education curriculum. In homeroom class, the record shows that Sarah sat at a table along the side of the room because she did not have an assigned desk. While other students worked on teacher appreciation cards, Sarah looked at a picture book. During lunch, Sarah ate with the paraprofessional at a table in the common lunchroom, but none of her nondisabled peers interacted with her. While in social studies class, her nondisabled peers read a unit about Asia while Sarah colored the top of a Xeroxed calendar. Beyond the IEP meetings, the record demonstrates that little has been done to support Sarah's integration into a nonsegregated environment. There appears to be little, if any, collaboration between special education and general education teachers in designing and implementing lessons that are academically appropriate for Sarah and sufficiently related to her peers' curriculum.

The majority asserts that the School District intends to improve Sarah's inclusion in general education settings by developing an age-appropriate schedule book, training staff how to walk with Sarah down hallways, assigning Sarah to a homeroom class located closer to her locker, and requiring Sarah's case manager to meet with Sarah's "education teacher on a weekly basis." These cursory modifications to Sarah's IEP fail to improve the overall integrity of her inclusion in general education.

Unfortunately, Sarah's participation in general education in this school district has deprived her of the benefits of a progressive inclusion program: recognition that she is a valued and visible member of the school community; exposure to age-

appropriate and varied curriculum and instruction; exposure to positive language and behavioral models of typically developing peers; and the development of social and academic relationships with general education teachers and nondisabled students. While the IDEA "does not require that a school either maximize a student's potential or provide the best possible education at public expense," *Fort Zumwalt Sch. Dist. v. Clynes*, 119 F.3d 607, 612 (8th Cir. 1997), and discourages courts from substituting their own notions of educational policy for those of trained educators, *Neosho R-V Sch. Dist.*, 315 F.3d at 1028, the School District fell far short of its required goal of providing her with the least restrictive environment to the maximum extent appropriate. Appellants' expert, Dr. Udvari-Solner, has expressed a reasonable concern that the School District's attempt at mainstreaming Sarah was ineffective and failed to meet her IEP goals. The questionable quality of Sarah's integration into general education makes a comparative analysis of the benefits of general education and special education difficult, at best.

With regard to the majority's suggestion that Dr. Udvari-Solner's expertise in special education practices is deficient, the record shows that she teaches graduate and undergraduate courses in elementary education, secondary education, and special education at the University of Wisconsin, Madison. (Appellants' App. Vol. II at 238.) She has supervised and trained education students who work with autistic children, and she teaches her students how to lesson plan, implement differentiated curriculum and cooperative learning techniques in special education. (Id. at 239.) She also directly assists teachers in the Madison public schools to serve students with autism and severe multiple disabilities. (Id. at 238.) The School District's expert witness disagreed with Dr. Udvari-Solner's assessment of Sarah's IEPs. Given this conflicting expert testimony, it was inappropriate to grant summary judgment in favor of the School District. Rather, the district court should have "weighed and evaluated the directly contradictory expert testimony" and made its findings of fact. *Hoefelman v. Conservation Comm'n of the Mo. Dep't of Conservation*, 718 F.2d 281, 285 (8th Cir. 1983). It failed to do so here.

Finally, the record reveals that the STARS program is outdated and in direct conflict with best curriculum practices in special education. It appears to offer Sarah fewer opportunities to improve her adaptive behavior, self-help, daily living, social, and communication skills than a mainstreamed context would. The STARS classroom may be unnecessarily restrictive, in that it limits Sarah's ability to learn relevant functional skills and independence that a segregated environment is designed to address. In the School District's Response to Report by Dr. Udvari-Solner, the School District explained that "[a] functional skill is one that provides the student with the opportunity to develop his/her level of personal independence and integrity." (Appellee's App. at A-114.) Yet, Sarah spends much of her instructional time engaged in matching colors, shapes, and patterns, and listening to music and books intended for toddlers. The classroom walls are covered with preschool materials that have little to do with the age-appropriate skills she is expected to learn and practice, as articulated in her IEP. She sorts toothbrushes and plastic dinosaurs, and helps "bake" cupcakes by placing a cupcake wrapper in a tin. She plays duck-duck-goose. Such tasks appear to be unconnected with meaningful activities that are performed at home, in school, and in vocational settings. Additionally, during the expert's two-day observation of Sarah in the STARS classroom, only one student spoke to Sarah using a complete sentence, and the staff spoke to the disabled students using an exaggerated and unnatural tone of voice. She also noted that Sarah had no opportunities to interact with nondisabled peers while in the STARS classroom. Instead, Sarah used a locker, a kitchen, sink, and bathroom in the special education wing of the school, which is isolated from general education classrooms and hallways.

In light of the fact that the School District insists that Sarah cannot benefit from greater inclusion in general education in spite of appellants' strenuous objection, and given Dr. Udvari-Solner's legitimate concerns regarding the quality of programming in STARS and in general education, it was clear error for the district court to hold that the School District complied with the IDEA in developing and implementing the IEP

-14-

proposed to the parents on March 14, 2004 and to grant the School District's motion for summary judgment on the administrative record.

_____