# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-1514

———————

| | |
|---|---|
| Larry Hansen,<br>on behalf of J.H., a minor,<br><br>Appellee,<br><br>v.<br><br>Republic R-III School District,<br><br>Appellant. | *<br>*<br>*<br>*<br>*   Appeal from the United States<br>*   District Court for the<br>*   Western District of Missouri.<br>*<br>*<br>* |

———————

Submitted: September 21, 2010
Filed: January 21, 2011

———————

Before GRUENDER, BRIGHT, and SHEPHERD, Circuit Judges.

———————

SHEPHERD, Circuit Judge.

This case presents the issue of whether J.H., a student at Republic R-III School District, is eligible for special education benefits under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1482. After Republic's administrative panel concluded that J.H. was not eligible, Larry Hansen, J.H.'s father, challenged the decision in the district court.[1] Hansen and Republic filed cross motions

———————

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

for judgment on the administrative record, which the district court resolved in favor of Hansen. Republic appeals the district court's order, and we affirm.

## I.

The administrative record reflects that J.H., a ninth-grade student at Republic, struggles socially and academically at school. He has been diagnosed with conduct disorder, bipolar disorder, and attention deficit hyperactivity disorder (ADHD). Since he began attending Republic in the fifth grade, J.H. has been suspended numerous times for threatening his classmates and teachers, has made suicidal comments on multiple occasions, and has consistently performed poorly in his classes and on standardized tests.

At the end of J.H.'s fifth-grade year, Hansen initiated proceedings under the IDEA seeking special education services for J.H. He made a formal request with Republic for an eligibility evaluation, and when Republic determined J.H. did not qualify, Hansen exercised his statutory right to challenge the decision at an administrative due process hearing. The hearing was conducted before Republic's Due Process Panel. After Hansen presented his case, Republic elected not to offer evidence and, relying on Hansen's submissions, moved for a directed verdict. The panel granted Republic's motion and issued a one paragraph opinion, concluding as a matter of law that J.H. did not qualify for special education services under the IDEA. Hansen sought judicial review of the panel's decision in the district court under section 1415(i)(2) of the IDEA. Both Hansen and Republic filed motions for judgment on the administrative record. Based on the evidence in the record, the district court held that J.H. was disabled as defined by the IDEA and thus eligible for special education benefits. Republic appeals, asserting that the district court erred in holding that J.H. meets the statutory definition of a "child with a disability" based on the facts in the administrative record and, alternatively, that the district court erred in failing to remand the case to the panel for additional proceedings sua sponte.

II.

Republic first argues that J.H. does not meet the statutory definition of a "child with a disability" based on the facts in the administrative record. The IDEA provides procedural safeguards to parents and guardians seeking to enforce a disabled child's right to a "free appropriate public education." See 20 U.S.C. §§ 1412 (a)(1)(A), 1415. One of those procedural safeguards is the right to bring a civil action to challenge the result of a due process hearing conducted pursuant to the statute. Id. § 1415(i)(2). In lawsuits filed under section 1415(i)(2), the district court is required to receive the records of the administrative proceedings, hear additional evidence at the request of a party, and independently determine the appropriate relief based on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C); Yankton Sch. Dist. v. Schramm, 93 F.3d 1369, 1373 (8th Cir. 1996).

Although the district court makes an independent determination as to the appropriate relief, it must give due weight to the factual findings of the administrative panel, Yankton Sch. Dist., 93 F.3d at 1376 n.6, and refrain from substituting its own judgment as to educational policy for that of school authorities. Indep. Sch. Dist. No. 283 v. S.D., 88 F.3d 556, 561 (8th Cir. 1996). Here, however, the panel's decision reflected neither factual findings nor educational policy decisions. The panel determined only that J.H. was ineligible for special education services as a matter of law based on the facts presented in Hansen's case-in-chief. Moreover, the parties did not seek to present additional evidence to the district court and did not dispute the underlying facts as to J.H.'s diagnosis, symptoms, behavior, and academic performance. Instead, the parties filed cross motions for judgment on the administrative record, disputing only the legal conclusion to be drawn from the facts in the record. Accordingly, the district court was free to consider the panel's legal conclusions de novo. See Marshall Joint Sch. Dist. No. 2 v. C.D., 616 F.3d 632, 636 (7th Cir. 2010); Muller v. Comm. on Special Educ. of the East Islip Union Free Sch. Dist., 145 F.3d 95, 102 (2d Cir. 1998). Likewise, we review the district court's legal

conclusion based on the administrative record de novo.[2] <u>Pachl v. Seagren</u>, 453 F.3d 1064, 1068 (8th Cir. 2006).

In order to be eligible for special education services under the IDEA, a student must first be a "child with a disability" as defined in section 1401(3). The statute provides 13 categories of eligibility, and Hansen argues that J.H. meets the statutory definition of the "emotional disturbance" and "other health impairment" categories. 20 U.S.C. § 1401(3)(A)(i).

We agree with the district court's conclusion that J.H. meets the eligibility requirements for "emotional disturbance" under the IDEA. The Code of Federal Regulations provides that "emotional disturbance" means a condition exhibiting at least one of five listed characteristics "over a long period of time and to a marked degree that adversely affects a child's educational performance." 34 C.F.R. § 300.8(c)(4)(i). Children who are only "socially maladjusted" and fail to exhibit at least one of the five provided characteristics do not qualify. <u>Id.</u> § 300.8(c)(4)(ii). Hansen argues that J.H. suffers from bipolar disorder and exhibits an "inability to build or maintain satisfactory interpersonal relationships with peers and teachers," which adversely affects his educational performance. <u>Id.</u> § 300.8(c)(4)(i)(B). Republic contends that J.H. is primarily socially maladjusted rather than emotionally disturbed.

Although this Circuit has not been called upon to define "emotional disturbance," a Fourth Circuit case is informative. In <u>Springer v. Fairfax County School Board</u>, 134 F.3d 659 (4th Cir. 1998), the student at issue was found to be merely socially maladjusted rather than emotionally disturbed. The evidence showed that the student had progressed successfully from grade to grade, had maintained

---

[2]Although the parties assert that we review the district court's findings of fact for clear error, the clear error standard of review is not implicated here because we review only the district court's legal conclusion.

positive relationships with teachers and peers, and had participated in extracurricular activities until the eleventh grade when he began stealing, sneaking out of his house, skipping school, and using marijuana and alcohol. Id. at 661. At that point, the student continued to score in the average to superior range on standardized tests, but his grades suffered due to skipping class and failing to complete assignments. Id. Additionally, "the overwhelming consensus" among the psychologists who examined the student was that he did not suffer from an emotional disturbance. Id. at 665.

In contrast, J.H. received numerous disciplinary referrals over a four-year period for threatening students and teachers, fighting with other students, and treating his peers and teachers with disrespect. After working with J.H., Republic's school-based mental health clinician, Peggy DeFazio, described him as socially unsuccessful due to his limited social skills and terminated their relationship because he threatened her. Unlike the student in Springer who started to fail his courses because he skipped class and refused to turn in assignments but continued to perform above average on standardized tests, J.H. consistently struggled to pass his classes, failed the standardized test he was required to pass for advancement to the seventh grade, and suffered academically because of his diagnosed bipolar disorder.

In support of its argument that J.H. did not exhibit an inability to build or maintain satisfactory interpersonal relationships, Republic cites the testimony of its director of special services, Matt White, who stated that J.H. did well with some teachers but not well with others. However, White based his opinion on behavior reports and had no personal interactions with J.H.

We also agree with the district court's conclusion that J.H. meets the eligibility requirements for "other health impairment" under the IDEA. The Code of Federal Regulations provides:

> Other health impairment means having limited strength, vitality, or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment, that—
> (i) Is due to chronic or acute health problems such as . . . attention deficit hyperactivity disorder . . . ; and
> (ii) Adversely affects a child's educational performance.

34 C.F.R. § 300.8(c)(9). Hansen argues that J.H.'s inability to focus and hyperactive behavior results from ADHD and adversely affects his educational performance. Republic contends that the evidence does not support a conclusive diagnosis of ADHD and that a diagnosis of ADHD alone does not entitle J.H. to special education services.

We agree with the district court that the administrative record supports the conclusion that J.H.'s educational performance is adversely affected by ADHD. First, the record reflects that J.H. was diagnosed with ADHD. J.H.'s treating psychiatrist, Dr. Colby Wang, diagnosed ADHD and prescribed medication for the disorder. The psychologist who first evaluated J.H., Dr. Anna Hertel, and the school's psychologist, Dr. Brian Petrovich, each gave a rule-out diagnosis[3] for ADHD. Defazio also found J.H.'s hyperactive, impulsive, and inattentive behavior to be consistent with ADHD.

Second, the record reflects that J.H.'s educational performance is adversely affected by ADHD. J.H.'s tutor, Renee Doubleday, testified that J.H. had difficulty focusing during tutoring sessions and that his concentration improved after J.H. began taking the ADHD medication prescribed by Dr. Wang. Defazio similarly found that

---

[3]A "rule-out" diagnosis, according to Dr. Hertel's testimony, means the patient meets some criteria for the disorder, but the doctor needs more information to rule it out and would not be comfortable diagnosing it at that time. Dr. Hertel stated, "The rule-out does not mean the person does not have the disorder. When you give it as a rule-out, it means there's a very good likelihood the person has the disorder."

J.H.'s hyperactive, impulsive, and inattentive behavior severely impaired his ability to learn. Further, J.H. initially failed the standardized test required for advancement to the seventh grade but passed when allowed to retake the test on ADHD medication. Although Republic correctly states that a diagnosis of ADHD alone does not entitle J.H. to special education services, it fails to cite any evidence in the record supporting the conclusion that ADHD does not adversely affect J.H.'s educational performance.

Republic alternatively argues that the district court erred in failing to remand the case to the panel sua sponte with instructions to make the factual findings that were absent from the panel's initial decision. We decline to address this argument because it was raised for the first time on appeal. Ryder v. Morris, 752 F.2d 327, 332 (8th Cir. 1985).

Based on the undisputed facts in the administrative record, J.H. meets the statutory definition of a "child with a disability" under the IDEA. Accordingly, we affirm the district court's order granting Hansen's motion for judgment on the administrative record.

GRUENDER, Circuit Judge, concurring in the judgment.

I agree with the district court that the record supports the conclusion that J.H. is a "child with a disability" under the IDEA, 20 U.S.C. § 1401(3), because he suffers from an "other health impairment," and, therefore, I concur in the judgment affirming the district court. Nevertheless, I disagree with the court's analysis to the extent that it accords no deference whatsoever to the underlying administrative decision of the Due Process Panel. Applying the proper standard, I also disagree with the court's conclusion that J.H. suffers from "serious emotional disturbance."

While review of an administrative decision under the IDEA is not as deferential as the well-known "substantial evidence test that courts ordinarily apply in federal

administrative law cases," courts are instructed to give "due weight" to the proceedings of the Due Process Panel and may not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648, 654-55 (8th Cir. 1999) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley,* 458 U.S. 176, 206 (1982)). The court holds that the "due weight" standard does not apply in this case because the Due Process Panel made "neither factual findings nor educational policy decisions." *Ante* at 3. To the contrary, while the Panel may not have provided detailed findings of fact, its decision to deny IDEA services to J.H. surely falls within the ambit of educational policy. In any event, the principle of affording due weight to a Due Process Panel's decision is not premised narrowly on the presence of express findings of fact. *See Rowley*, 458 U.S. at 206 ("The fact that § 1415(e) requires that the reviewing court '*receive the records* of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings." (emphasis added)); *Lathrop R-II Sch. Dist. v. Gray ex. rel. D.G.*, 611 F.3d 419, 423 (8th Cir. 2010) ("[T]he district court must accord due weight to the administrative panel's *decision.*" (emphasis added)). Therefore, I would conclude that the court should have afforded due weight to the Due Process Panel's decision.

With regard to our standard of review of the district court's decision, I agree with the court that *de novo* review is appropriate, although I reach that conclusion by a different path. The court indicates that the district court merely drew legal conclusions from settled facts in the administrative record. I disagree. Before reaching its ultimate legal conclusion that J.H. suffers from a "serious emotional disturbance" and from an "other health impairment," the district court necessarily resolved several underlying factual questions from conflicting evidence in the administrative record. For example, the district court's findings that "JH was unable to build and maintain satisfactory interpersonal relationships" and "JH suffered from . . . ADHD," *Hansen v. Republic R-III Sch. Dist.*, No. 09-3119, slip op. at 6, 9

-8-

(W.D. Mo. Feb. 5, 2010), can only be characterized as factual findings because the record contains evidence to the contrary on both points. Because the district court heard no new evidence and made its determinations after reviewing only the record of the Due Process Panel proceeding, however, I conclude that *de novo* review is appropriate for the district court's factual findings as well. *See JH ex rel. JD and SS v. Henrico Cnty. Sch. Bd.*, 326 F.3d 560, 566 (4th Cir. 2003) ("[W]e need not defer to factual recitations made by a district court from the administrative record, because that court stands in no better position than do we in reviewing the record." (quoting *MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 530-31 (4th Cir. 2002))); *see also Reaves v. Mo. Dep't of Elementary & Secondary Educ.*, 422 F.3d 675, 681 (8th Cir. 2005) ("[W]here the district court received no new evidence and made no independent factual findings, we conclude that the *de novo* review of the district court is appropriate.").

The existence of conflicting testimony in the administrative record on key points serves to illustrate that due weight should be given to the Due Process Panel's decision because "the administrative panel had an opportunity to observe the demeanor of the witnesses." *Lathrop R-II*, 611 F.3d at 427 (quoting *Strawn v. Mo. State Bd. of Educ.*, 210 F.3d 954, 958 (8th Cir. 2000)). Affording due weight to the Due Process Panel's decision, I come to a different conclusion than the court on the question of whether a preponderance of the record evidence supports the finding that J.H. suffers from "serious emotional disturbance" because he displays an "inability to build or maintain satisfactory interpersonal relationships with peers and teachers." *See Rowley*, 458 U.S. at 205 ("[A] court 'shall . . . bas[e] its decision on the preponderance of the evidence . . . .'" (quoting § 1415(e)(2)). The court identifies some evidence in the record that supports J.H.'s claim, such as J.H.'s bipolar diagnosis, evidence that J.H. was disrespectful toward figures of authority, and evidence that J.H. struggles with academic assignments. However, the court improperly discounts the testimony of Matt White, the director of special services for Republic, who stated that J.H. has "demonstrated to us [Republic staff] that he can

develop appropriate relationships. He's doing it right now." White also testified that J.H. had been able to form relationships with his teachers: "he did well with some [teachers] and not well with others." White stated that Joni Ragain, a Republic counselor, "had a very close relationship with [J.H.]." The court also overlooks the testimony of Mary Newby, J.H.'s sixth grade math teacher, who stated that she thought J.H. was not in need of special education services because "[t]he time that he was with me, he was one of my top students when he was in my classroom. . . . I never had any behavior problems with [J.H.]."

Furthermore, the court overlooks evidence which supports Republic's argument that J.H. is ineligible for IDEA services under the "serious emotional disturbance" prong because he is socially maladjusted rather than emotionally disturbed. Matt White described socially maladjusted students as the "kinds of kids that have difficulty taking responsibility for their actions. They have very little or no remorse. They know the rules but still continue to want to break them. They -- their behavior is by design, and they use their behavior to manipulate the situation to get their needs met." In contrast, White stated that "[e]motionally disturbed kids typically have things that are much more internalizing. . . . They have faulty feelings. They have a lot of guilt and a lot of remorse. Sometimes they have delusions and hallucinations." White testified that the Republic IDEA eligibility team determined that J.H. exhibited behaviors more akin to social maladjustment than emotional disturbance because "[J.H.] controls his behavior. He turns it on and turns it off." An example of such control is evident in the testimony of Dr. Anna Ross Hertel, a psychologist who examined J.H. Dr. Hertel testified that, at the start of her examination, J.H. was "extremely angry, [he] did not want to come back to the testing room willingly, [he] threw his cell phone, smashed it into pieces." Nevertheless, after "Mr. Hansen offered a number of items that he would purchase [for J.H.] if he would just complete the testing," including "a laptop from Best Buy," J.H. agreed to continue the examination. Once J.H. had accepted his father's proposal, Dr. Hertel stated that "he was compliant,

pleasant, completed everything I asked him to do . . . [and] apologized for behaving in such a manner."

After considering the entire record *de novo* and giving due weight to the Due Process Panel's decision, I would find that the preponderance of the evidence does not support the conclusion that J.H. was incapable of forming and maintaining relationships with peers or teachers and that J.H. was not merely socially maladjusted. Therefore, I cannot conclude that J.H. suffers from "serious emotional disturbance" under the IDEA. *See R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 944, 945 (9th Cir. 2007) (where there was "conflicting evidence regarding whether [a student] could maintain satisfactory relationships [with] testimony on both sides," the court found that the student "was not eligible for IDEA relief under this prong").

Nevertheless, even giving due weight to the Due Process Panel's decision to deny IDEA benefits to J.H., I agree with the court that the preponderance of the record evidence supports its finding that J.H. suffers from an "other health impairment" that adversely affects his educational performance. In particular, J.H.'s treating psychiatrist, Dr. Colby Wang, conclusively diagnosed him with ADHD, and two other experts assigned him an ADHD rule-out diagnosis. Dr. Hertel testified that J.H. displayed "hyperactivity, impulsivity, [and] difficulty concentrating." Renee Doubleday, J.H.'s Republic-provided tutor, testified that J.H. often would refuse to do work, use profane language, and run around the room during their tutoring sessions. Doubleday stated that she and J.H. had "quite a few sessions that had not gone very well" before he began taking medication for ADHD. Moreover, there are several independent indications that J.H.'s educational performance improved after he began taking ADHD medication.

In conclusion, I disagree with the court's holding that due weight need not be afforded to the underlying administrative decision of the Due Process Panel. I also

agree with the Due Process Panel's decision that J.H. does not suffer from "serious emotional disturbance." However, even giving due weight to the Due Process Panel's decision, I agree with the district court that J.H. is a "child with a disability" under the IDEA because he suffers from an "other health impairment" that adversely affects his educational performance. As a result, I concur in the judgment of the court.

_____